IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On Briefs January 19, 2005 Session

## STATE OF TENNESSEE DEPARTMENT OF CHILDREN SERVICES v. DIANE YVONNE SANGSTER, ET AL.

A Direct Appeal from the Juvenile Court for Lauderdale County
No. J5-906    The Honorable Rachel J. Anthony, Judge

---

### No. W2004-02060-COA-R3-PT - Filed February 4, 2005

---

This is a termination of parental rights case. The parents appeal from the order of the Juvenile Court of Lauderdale County, terminating their parental rights. Specifically, Appellants assert that the grounds of abandonment for failure to support and severe child abuse cited for termination are not supported by clear and convincing evidence in the record and that termination of their parental rights is not in the best interests of the child. Because we find clear and convincing evidence in the record to support the trial court's findings, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

Barbara A. Deere of Dyersburg for Appellant, Lafayette Douglas Sangster
J. Barney Witherington IV for Appellant, Diane Sangster

Paul G. Summers, Attorney General and Reporter, Douglas Earl Dimond, Senior Counsel for Appellee, Tennessee Department of Children's Services

### OPINION

LaFayette Douglas Sangster and Diane Yvonne Sangster (together, the "Sangsters," "Respondents," or "Appellants") appeal from the termination of their parental rights to their child L.S. (d.o.b. 3-3-98). L.S. has three half-siblings, T.T. (d.o.b. 8-5-93), B.T. (d.o.b. 10-10-96) and D.T. (d.o.b. 3-3-98). On August 20, 2002, nine-year-old B.T. arrived at school with facial injuries that included swelling of his lower lip, his nose, and his forehead, as well as bruises and scars on his back and legs in various stages of healing. B.T., who wore a helmet as a result of a seizure disorder, was transported by ambulance to MedSouth Healthcare. B.T. reported that his stepfather, LaFayette Sangster, had hit him. Medical examinations revealed that D.T. and T.T. also had scars and bruises

on their backs and legs in various stages of healing. On August 22, 2002, the State of Tennessee Department of Children's Services ("DCS," or "Appellee") filed a "Petition for Temporary Custody." On that same day, the trial court entered a "Protective Custody Order."

Diane Sangster initially denied any abuse. However, she later admitted that LaFayette Sangster had injured B.T. by hitting him in the face and that she and LaFayette Sangster had both administered whippings with a double leather carpenter's belt. LaFayette Sangster admitted hitting B.T. in the face with a weight belt. The Sangsters were arrested and charged with aggravated child abuse.

On September 17, 2002, DCS prepared a Permanency Plan, which was signed by the Sangsters. The Permanency Plan contained no responsibilities for the Sangsters and no services to be provided by DCS. In an "Affidavit of Reasonable Efforts," signed and filed on October 7, 2002, DCS case manager Patricia Smith stated that DCS had not provided services to the family due to the indication that there would be a severe abuse finding.[1] The Permanency Plan was ratified by Order entered December 5, 2002.

A final hearing on DCS' "Petition for Temporary Custody" was held on October 7, 2002.[2] On November 14, 2002, the trial court entered an "Order on Adjudication and Disposition." "Upon agreement of the parties," the trial court found by clear and convincing evidence that the children were dependent and neglected. The Order also reflects that the Sangsters stipulated to the following:

> Having been represented by counsel and informed of his rights, LaFayette Sangster stipulates to a finding that [L.S.] is a dependent and neglected child, who has been severely abused pursuant to T.C.A. 37-1-102 (b)(21)(A), (B); that LaFayette Sangster knowingly failed to protect said child from the abuse....
>
> Having been represented by counsel and informed of her rights Diane Sangster stipulates to a finding that [T.T., B.T., D.T. and L.S.] are dependent and neglected children, who have been severely abused pursuant to T.C.A. 37-1-102 (b)(21)(A), (B); that Diane Sangster knowingly failed to protect said children from the abuse....

The trial court notes in this Order that the three oldest children, T.T., B.T., and D.T., had previously been taken into DCS' custody due to a similar incident in which LaFayette Sangster inflicted abuse on these children. The trial court also imposed support obligations on the Sangsters. Effective October 1, 2002, Diane Sangster was ordered to pay total child support of $780 per month. LaFayette

---

[1] *See* T.C.A. § 37-1-166(g)(4)(A) and discussion *infra*.

[2] A probable cause hearing was waived by the parties upon an Agreed Order entered on November 14, 2002.

Sangster was ordered to pay support of $300 per month for L.S.'s support, also effective October 1, 2002.

On July 22, 2003, DCS filed a "Petition to Terminate Parental Rights" (the "Petition") seeking termination of the Sangsters' parental rights to L.S. As grounds, DCS alleged severe child abuse pursuant to T.C.A. § 36-1-113(g)(4), noting that the trial court had found such abuse in its November 14, 2002 "Order of Adjudication and Disposition." DCS also alleged abandonment pursuant to T.C.A. § 36-1-113(g)(1), asserting that the Sangsters had willfully failed to pay child support. The Sangsters entered separate Answers to DCS' Petition. She on September 11, 2003 and he on January 12, 2004. Both denied the grounds relied upon by DCS in its Petition. On January 12, 2004, Diane Sangster also entered a Counter-Petition seeking visitation with L.S. On February 2, 2004, the Sangsters filed separate "Motion[s] for Extraordinary Relief and Memorandum of Law." These respective Motions read the same and, in relevant part, as follows:

> 1. Respondent[s] did plead guilty to child abuse charges in Lauderdale County Circuit Court and did serve a jail sentence for said charges.
>
> 2. On November 14, 2002, under the advice of [the Sangsters' respective attorneys], Respondent[s] did stipulate to a finding of severe child abuse, whereby this Court did enter an order reflecting said stipulation on that same date.
>
> 3. Respondent[s] [were] unaware both at the time [they] pled guilty and the time[they] stipulated to a finding of severe child abuse that these concessions could result in the termination of [their respective] parental rights.
>
> 4. Respondent[s] would neither have pled guilty nor stipulated to a finding [of] child abuse had [they] known that termination of [their] parental rights would likely result by [their] so yielding.
>
> *                              *                              *
>
> 10. Respondent[s] did not stipulate to severe child abuse voluntarily and with full knowledge of the direct consequences of [their] stipulation.
>
> 11. Respondent[s'] stipulation[s] to severe child abuse w[ere] invalid and should be set aside.

A hearing was held on April 19, 2004. Following that hearing, the trial court entered its "Findings of Fact and Conclusions of Law and Order Terminating Parental Rights" (the "Final Order") on July 20, 2004. The Final Order reads, in pertinent part, as follows:

11. Respondents Diane Sangster and LaFayette Sangster did not pay court ordered support for [L.S.].... Both Respondents were aware of their child support obligation. While under the support obligation they were temporarily incarcerated, lost employment, incurred court costs, fines , and probation fees, and lost personal property, but they had *not* been incarcerated, incapacitated or restricted from working by a medical physician for the four months preceding the filing of the TPR petition. Respondent Diane Sangster admitted to both working and receiving unemployment [compensation] during the same four-month period. She further testified that the support was taken out of her wages and unemployment benefits; however, the NPSS screens for the Department of Human Services do not reflect any payments by her during this time. Respondent LaFayette Sangster acknowledged that he had income during this time frame from mowing lawns but did not pay his child support. Respondents contend that they filed bankruptcy after [L.S.] and her siblings were removed and thus [were] not able to pay child support. Respondent[s'] bankruptcy status does not absolve them of their obligation to pay support. Nor did Respondents provide any information that they had included their child support obligation in their bankruptcy. The Respondents' failure to pay the court-ordered child support for four months preceding the filing of the TPR petition is willful.

\* \* \*

## CONCLUSIONS OF LAW:

\* \* \*

2. There is clear and convincing evidence to terminate parental rights pursuant to T.C.A. §36-1-113(g)(1), in that Respondents Diane Sangster and LaFayette Sangster have willfully abandoned their minor child, [L.S.], pursuant to T.C.A. § 36-1-102(1)(A)(i), by willfully failing to provide support or make reasonable payments toward the support of the child for a period of four months preceding the filing of the petition.

3. There is clear and convincing evidence to terminate parental rights pursuant to Tennessee Code Annotated § 36-1-113 (g)(4), in that Respondents have been found to have committed severe abuse against [L.S.] as defined in Tennessee Code Annotated § 37-1-102 by order of this Court entered November 14, 2002.

4. Termination of Parental Rights is in the best interest of the minor child pursuant to T.C.A. 36-1-113.

The Sangsters appeal from the Final Order and raise two issues for review: (1) Whether the trial court erred in finding that the State has proved, by clear and convincing evidence, the grounds for termination of the Sangsters' parental rights; and (2) Whether the trial court erred in finding, by clear and convincing evidence, that termination of the Sangsters' parental rights is in the best interest of the minor child.

Since this case was tried by a court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

T.C.A. § 36-1-113(c)(Supp. 2004) governs termination of parental rights and requires that such termination be based upon:

> (1) A finding by the court by clear and convincing evidence that the grounds for termination [of] parental or guardianship rights have been established; and
> (2) That termination of the parent's or guardian's rights is in the best interest of the child.

## Grounds for Termination

The trial court terminated the Sangsters' parental rights on the grounds of abandonment and severe child abuse, which are codified at T.C.A. § 36-1-113(g)(1) and T.C.A. § 36-1-113(g)(4) (Supp.2004) respectively, to wit:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:
>
> (1) Abandonment by the parent or guardian, as defined in §36-1-102, has occurred;
>
> \*     \*     \*
>
> (4) The parent or guardian has been found to have committed severe child abuse as defined in §37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against

-5-

any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian;

_____

T.C.A. § 36-1-113 (c) allows for termination of parental rights if any one of the grounds outlined in T.C.A. § 36-1-113(g) are found by clear and convincing evidence, and termination is in the best interest of the child. We have reviewed the entire record in this case and we find that the record is replete with evidence to support the trial court's finding that termination of the Sangsters' parental rights is warranted on the grounds listed in the Final Order. We further find, in accordance with the trial court, that termination of the Sangsters' parental rights is in the best interest of this child.

Abandonment Grounds

T.C.A. §36-1-102(1)(A)(Supp. 2004) defines "Abandonment," in relevant part, as follows:

(1)(A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

The trial court terminated both of the Sangsters parental rights to L.S. on the grounds of abandonment for their failure to provide any child support in the four months preceding the filing of the Petition. At trial, Diane Sangster testified that she had paid some support for L.S. through wage assignment in the months immediately preceding DCS' filing. In its brief, DCS states that "[w]hile the trial court also terminated Ms. Sangster's parental rights on [abandonment] ground[s], the State has reason to believe Ms. Sangster's testimony, although undocumented in the record, that she paid child support via wage assignment during at least some of the relevant period and [the State] will not therefore defend the trial court's decision against her on this ground." Because DCS concedes that this ground is not applicable to Diane Sangster, we will address only whether there is clear and convincing evidence to support termination of LaFayette Sangster's parental rights on this ground. We find that such evidence exists. Concerning his support payments during the relevant four month period, LaFayette Sangster testified, in relevant part, as follows:

Q. So, during those months, four months [preceding the filing of the Petition to Terminate], you [LaFayette Sangster] were unemployed, you said?

A. Yes.

Q. Your wife testified that you helped her pay the bills.

A. Yes.

Q. And that she relied on your income during that time?

A. Pushing lawn mowers.

Q. So, you were able to make some money. You just testified that you were unemployed.

A. Yes. I was just saying I wasn't employed, you know, at a factory or such. That's what I'm talking about.

Q. Okay. So, you were making money during that time?

A. Yeah.

\*                                        \*                                        \*

Q. So, you were able to work and did make money?

A. Just working yards.

Q. Did you pay any child support during that time?

A. No, ma'am.

By his own testimony, it is clear that LaFayette Sangster made some income during the four month period preceding DCS' filing and paid no portion of it toward the support of L.S. Grounds of abandonment *vis a vis* LaFayette Sangster are, therefore, met by clear and convincing evidence.

Severe Child Abuse Grounds

T.C.A. §37-1-102(b)(21) (Supp. 2004) defines "Severe Child Abuse," in relevant part, as follows:

(21) "Severe child abuse" means:

    (A) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause great bodily harm or death and the knowing use of force on a child that is likely to cause great bodily harm or death;

It is clear from the statute and the relevant case law that a parent who knowingly permits severe abuse is as culpable as the person who inflicts such abuse. ***See, e.g., Nash-Putnam v. McCloud***, 921 S.W.2d 170, 176 (Tenn. 1996) (holding that "[a]llowing a child to be abused is egregious abuse"). In this case, the Sangsters, through counsel, stipulated that they had committed severe child abuse and the trial court so found by clear and convincing evidence in its Order of November 14, 2002, *see supra*. The Sangsters also pled guilty to criminal charges of child abuse and served jail time for those offenses. Notwithstanding these stipulations, findings, and pleadings, the evidence adduced at the hearing on DCS' Petition clearly and convincingly supports a finding that the three half-siblings of L.S. were severely abused at the hands of the Sangsters. The photographs admitted as collective Exhibit 1 evince long-term and systematic beatings of these minor children. The photographs are corroborated by the testimony of April Smith, the DCS case worker who was initially called to the children's school to investigate, and also by the testimony of Diane Sangster, to wit:

Q. Ms. Sangster, do you believe that your husband abused your three boys, or do you believe it was corporal punishment?

A. I believe it was corporal punishment that went out of hand. It went out of hand.

Q. You can't even acknowledge that it was abuse?

A. Well, it, you know, at the time I believed it to be corporal punishment, but the way it's, you know, the way it's looked at now, it's abuse.

\*                       \*                       \*

Q. I'm sorry. You said you now agree that it's abuse?

A. Well, at the time, you know, at the time we thought that, you know, that it was just corporal punishment.

    But, you know, as we've had time to, you know, as we've been away from the children and everything, we have had time to talk, talk about our feelings and everything, you know.

It was abuse, but it was unintentional. It was unintentional. It was unintentional.

Q. You said he [LaFayette Sangster] would go into a room by himself, and he would–I believe your words–administer corporal punishment, but it was unintentional. So, was it unintentional that you characterize–

A. It was unintentional abuse.

Q. Oh, okay. But he [LaFayette Sangster] intentionally hit the kids; right?

A. He wasn't trying to hurt the children. He was trying to administer corporal punishment. He was–

Q. So, you're justifying what he did?

A. At that time I had justified it at that time.

This portion of Diane Sangster's testimony not only corroborates the fact that LaFayette Sangster abused these children; it also provides proof that Diane Sangster knew that he was beating the children–a fact that makes her equally culpable under the statute as discussed above.

In his brief, LaFayette Sangster argues that "L.S. showed no physical signs of abuse." This fact is unpersuasive under the statute, which clearly states that the ground is met when the abuse is perpetrated upon " the child who is the subject of the petition *or against any sibling or half-sibling of such child*." T.C.A. § 36-1-113 (g)(4). That requirement is clearly met in this case.

LaFayette Sangster also contends that DCS failed to provide reasonable services in this case. However, T.C.A. §37-1-166(g)(4)(A) (2001) states:

> (4) Reasonable efforts of the type described in subdivision (g)(2) shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that:
>
> (A) The parent has subjected the child that is the subject of the petition or any sibling or half-sibling of the child who is the subject of the petition or any other child residing temporarily or permanently in the home to aggravated circumstances as defined in § 36-1-102; [3]

---

[3] T.C.A. § 36-1-102(9) (Supp. 2004) defines "Aggravated circumstances" to include severe child abuse.

Based upon the trial court's finding of severe abuse in its November 14, 2002 Order, DCS is statutorily absolved from providing such efforts to the Sangsters.

Based upon the foregoing, there is clear and convincing evidence in this record to support the trial court's finding that the Sangsters committed severe child abuse upon the half-siblings of L.S. This ground is, therefore, met.

**Best Interests**

Having found that all of the grounds for termination listed in the Final Order are well supported by clear and convincing evidence in this record, we now turn to the question of whether the evidence clearly and convincingly evinces termination to be in L.S.'s best interest.

T.C.A. §36-1-113(i) (Supp. 2004) reads, in relevant part, as follows:

> (i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5- 101.

In this case, the trial court made the following findings in its Final Order concerning best interests:

12. The Court finds that it is in the best interest of [L.S.] that the parental rights of Respondents Diane Sangster and LaFayette Sangster be terminated, because:

a) Respondents Diane Sangster and LaFayette Sangster have failed to make an adjustment of circumstance, conduct, or conditions as to make it safe and in the child['s] best interests to be in the home of Respondents. DCS made clear to Respondents, in August 2002, their intention to seek a severe abuse finding and not return [L.S.] to them. Respondents participated in a permanency plan staffing and signed in agreement with the plan wherein the goals of the plan were Adoption and Exit Custody to Live with Relative. Pat King, the initial home county case manager assigned to [L.S.], was the DCS employee who participated in the staffing. Ms. King testified that she made clear during the staffing to the Respondents that because of the severity of the abuse DCS did not intend to return [L.S.] to them and would not provide them services. Respondents Sangster were not prohibited from obtaining services on their own. Respondents are no strangers to dependency and neglect/abuse issues, as set out herein above. Respondent Diane Sangster's three sons were removed from her custody by DCS in Haywood County as the result of Respondent LaFayette Sangster's infliction of physical injury, and he was incarcerated. While Respondents offered proof of attempts at counseling with their pastor (who is not a licensed therapist), they did not disclose to the pastor that this was a repeat instance of abuse and evinced minimal, if any, improvement or adjustment as a result of said counseling.

b) At the time of the physical abuse against Respondent Diane Sangster's children, Respondents were residing in the same house. Pictures of the boys' injuries depict both brutality and physical abuse by Respondent LaFayette Sangster against [L.S.'s] siblings. Both

-11-

Respondents pled guilty to criminal charges stemming from the instant abuse.

c) Respondents have failed to pay their court ordered child support.

Like the trial court, this Court is particularly concerned with the repeat nature of the abuse against L.S.'s half-siblings. There is no evidence in this record, other than their own testimonies and the fact that they have completed an anger management course, to support a finding that the Sangsters have the skills necessary to control and parent these children without resorting to their pattern of violence. Given the severe and brutal nature of the abuse inflicted upon L.S.'s half-siblings (as evinced by the photographs and testimony), it would be a chance too great to risk to place any child back into this home. From the record as a whole, we find that there is clear and convincing evidence to support the trial court's finding that it is in L.S.'s best interests to terminate the Sangsters' parental rights.

For the foregoing reasons, we affirm the Final Order of the trial court, terminating the parental rights of Diane Sangster and Lafayette Sangster to L.S. Costs of this appeal are assessed one-half to Appellant Diane Sangster and her surety and one-half to Appellant LaFayette Sangster and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.